IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PRECISION ENERGY SERVICES, INC., § § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. H-11-4492 |
| § | |
| THRUBIT, LLC, § | |
| Defendant. § | |

**MEMORANDUM AND ORDER ON CLAIM CONSTRUCTION**

This patent case is before the Court for construction of the disputed claim terms in United States Patent No. 7,537,061 ("the '061 Patent"). The Court conducted a hearing pursuant to *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 390 (1996) ("*Markman* hearing"), on March 6, 2013. Based on the evidence before the Court, the arguments presented by counsel, and the governing legal authorities, the Court issues this Memorandum and Order construing the disputed claim terms.

**I.   BACKGROUND**

Plaintiff Precision Energy Services, Inc. ("Precision") is the owner of the '061 Patent, entitled "System and Method for Releasing and Retrieving Memory Tool with Wireline in Well Pipe." The patent covers a system for deploying memory tools used to conduct measurements and record data in sub-surface earth formations through the

borehole of a well drilled in the earth. The patented system facilitates the deployment of memory tools in wells that are deviated or horizontal.

Precision sued Defendant ThruBit, LLC ("ThruBit") alleging infringement of Claims 1, 2, 6-9, 11, 13, 16, 18-19, 21, 24-25, and 28 of the '061 Patent. ThruBit filed a Counterclaim, seeking a declaratory judgment of non-infringement, invalidity, and unenforceability. The parties have now withdrawn claims and counterclaims relating to Claims 24-25 and 28.

The parties filed a Joint Claim Construction Chart and extensive briefing on the disputed claim terms. The parties advised that certain terms did not need to be construed by the Court, and the Court agrees. These terms include "landing assembly," "memory tool," "tool," and "insert."[1]

Additionally, the parties agreed prior to the *Markman* hearing that certain terms should be construed in a particular manner. The parties agreed that the term "coupling

---

[1] The parties in their final Joint Claim Construction and Prehearing Statement [Doc. # 101] again represented to the Court that the term "memory tool" required no construction. At the end of the *Markman* hearing, however, Precision questioned whether the term actually needed to be construed by the Court. Precision stated that the term should be construed to mean "logging device with memory." ThruBit maintained that the term required no construction, but argued that it should not be construed as limited to a "logging tool" but should include any "tool with memory." The Court, after considering the parties' arguments, noted that the issue had not been briefed and declined to construe the term "memory tool" at this time. If it later becomes apparent that the term requires construction, the parties will be allowed to brief the issue and the Court will, if appropriate, construe the term.

member" should be construed to mean a "device on a logging tool that couples to and decouples from the wireline." The parties agreed that the term "coupling mechanism" should be construed to mean a "device on the wireline that couples to and decouples from the coupling member." During the *Markman* hearing, the parties agreed that the term "slot for communicating fluid around the landing ring" should be construed to mean "a fluid bypass around the landing ring." The Court adopts these agreed constructions.

The parties withdrew from consideration Claims 24, 25 and 28 in the '061 Patent. These claims were traditional "means plus function" claims. The parties continue to disagree whether terms in other asserted Claims are effectively "means plus function" terms to be construed pursuant to 35 U.S.C. § 112, ¶ 6.

The Court conducted a *Markman* hearing regarding the terms and issues that remain in dispute. The Court now construes the disputed claim terms.

## II.     GENERAL LEGAL STANDARDS FOR CLAIM CONSTRUCTION

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). The patent claims in issue must be construed as a matter of law to determine their scope

and meaning. *See, e.g., Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 390 (1996), *aff'g*, 52 F.3d 967, 976 (Fed. Cir.) (*en banc*); *Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1317 (Fed. Cir. 2007).

"Claim terms are entitled to a heavy presumption that they carry their ordinary and customary meaning to those skilled in the art in light of the claim term's usage in the patent specification." *Elbex Video, Ltd. v. Sensormatic Elec. Corp.*, 508 F.3d 1366, 1371 (Fed. Cir. 2007) (citing *SuperGuide Corp. v. DirecTV Enters. Inc.*, 358 F.3d 870, 874 (Fed. Cir. 2004), and *Omega Eng'g, Inc. v. Raytek Corp.,* 334 F.3d 1314, 1323 (Fed. Cir. 2003)). The "ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, *i.e.*, as of the effective filing date of the patent application." *Phillips*, 415 F.3d at 1313; *see also ICU Med., Inc. v. Alaris Med. Sys., Inc.*, 558 F.3d 1368, 1374 (Fed. Cir. 2009). This "person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Phillips*, 415 F.3d at 1313; *ICU*, 558 F.3d at 1374.

Intrinsic evidence is the primary resource for claim construction. *See Power-One, Inc. v. Artesyn Techs., Inc.*, 599 F.3d 1343, 1348 (Fed. Cir. 2010) (citing *Phillips,* 415 F.3d at 1312). For certain claim terms, "the ordinary meaning of claim

language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips*, 415 F.3d at 1314 (citing *Brown v. 3M*, 265 F.3d 1349, 1352 (Fed. Cir. 2001)). For other claim terms, however, the meaning of the claim language may be less apparent. To construe those terms, the Court considers "those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean . . . [including] the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." *Id.*

The claims "provide substantial guidance as to the meaning of particular claim terms." *Id.* The Court may consider the context in which the terms are used and the differences among the claims. *See id.* "Because claim terms are normally used consistently throughout the patent, the usage of a term in one claim can often illuminate the meaning of the same term in other claims." *Id.* Because the claims "are part of a fully integrated written instrument," the Court may also consider the specification and the patent's prosecution history. *Id.* at 1315, 1317. When the claims

use separate terms, "each term is presumed to have a distinct meaning." *Primos, Inc. v. Hunter's Specialties, Inc.*, 451 F.3d 841, 847 (Fed. Cir. 2006).

The Federal Circuit has emphasized that "there is no magic formula or catechism for conducting claim construction." *Phillips*, 415 F.3d at 1324. "The sequence of steps used by the judge in consulting various sources is not important; what matters is for the court to attach the appropriate weight to be assigned to those sources in light of the statutes and policies that inform patent law." *Id.* (citing *Vitronics*, 90 F.3d at 1582).

### III.   CONSTRUCTION OF DISPUTED CLAIM TERMS

As to the disputed claim terms in the Supplemental Joint Claim Construction and Prehearing Statement [Doc. # 101], the Court has carefully reviewed the '061 Patent, specifically its claims and specifications, and the prosecution history. The Court also has considered dictionary definitions, counsels' arguments presented at the *Markman* hearing, and governing Federal Circuit authority. On this basis, the Court construes the following disputed terms in the claims of the '061 Patent.

#### A.   "Landing Ring" and "Landing Collar"

The term "landing ring" is used in Claims 1, 6, 8, 9, and 18. The Court construes the term "landing ring" to mean "a circular shoulder used for landing thereon." The drafter of the '061 Patent chose to use the term "ring," and a "ring" is

circular. Additionally, the "landing ring" is fitted on the end of a pipe, which is discussed in the '061 Patent as having a diameter, indicating that it is circular. Each of the "landing rings" disclosed in the '061 Patent is circular. It is clear that the external surface of the "ring" in the '061 Patent must be circular. Plaintiff argues, however, that the interior edge of the ring may be segmented. Plaintiff cites to prior art, specifically the Milne Patent, U.S. Patent No. 6,578,631, that includes a segmented collar. Plaintiff's argument is unpersuasive. As discussed below, the "ring" and the "collar" need not be the same shape and, therefore, evidence of a "segmented collar" in the prior art does not persuade the Court that the "ring" may similarly be segmented. Moreover, where the prior art intends for the collar to be segmented, the term "segmented" or the term "dogs" is used. *See, e.g.,* Milne (U.S. Patent 6,578,631); Wittrisch Patent, U.S. Patent No. 5,217,075. If the drafter of the '061 Patent had intended to include segmented rings or shoulders, he could (and should) have used those terms. Instead, the drafter chose to use the term "ring" without modification. The Court rejects Plaintiff's argument that the "landing ring" need not be circular and may be segmented.

The Court agrees with Plaintiff that the "landing collar," found in Claims 1, 6, 8, 11, and 18, need not form a complete circle. The "collar," while rounded, does not need to form a full 360º circle. Although the '061 Patent provides that the "landing

collar engages with the landing ring," there is no limitation that the collar must engage at every point of the landing ring, and the Court declines to add that limitation. As a result, the Court construes "landing collar" to mean a "shoulder used for landing."

### B.   Claim Terms "Divert," "Diverts," and "Diverting"

Claims 1, 6, 8, and 18 include some form of the word "divert." Claim 1 reads "diverting fluid communication around the engagement of the landing collar against the landing ring via the at least one slot defined in the landing assembly." Claim 6 provides for a "slot allowing fluid flow to be diverted past the engagement of the landing collar against the landing ring." Claim 8 provides that a "slot in the landing assembly diverts fluid communication around the engagement of the landing collar with the landing ring." Claim 18 provides that a "slot in the insert diverts fluid communication around the engagement of the landing collar with the landing ring."

Plaintiff proposes that the diversion terms be construed to mean "directing the course of fluid flow." Defendant proposes that the proper construction requires that the fluid flow is altered such that it does not flow through the tool. Plaintiff argues that Defendant's proposed construction improperly imposes a negative limitation not present in the diversion claims.

Plaintiff is correct that negative limitations, which define an invention in terms of what it does not do rather than what it does, are generally disfavored. *See Omega*

*Eng'g Inc. v. Raytek Corp.*, 334 F.3d 1314, 1322-23 (Fed. Cir. 2003). In this case, however, a careful reading of the '061 Patent leads the Court to construe the diversion terms to mean that the fluid flow is altered to go around the landing ring and not through the tool. The drafter of the '061 Patent chose to use variations of the term "divert" rather than of the term "direct." The word "divert" means to alter course or turn from one course to another. *See* Random House Dictionary (Unabridged) 419; Webster's New World Dictionary 400. In the system covered by the '061 Patent, fluid that is flowing toward the tool is turned away from that path to flow around the landing ring. The flow is altered "via the at least one slot" around the engagement of the landing collar against the landing ring. The parties agree that the slot through which the flow is altered or "diverted" is "around the landing ring," and thus the diversion must, as a factual matter, bypass, *i.e.*, go around the landing ring/collar engagement. The flow cannot pass through the tool and still fall within the '061 Patent because the flow is ***around*** the ring and the tool is ***inside*** the ring around which the flow is diverted.

Plaintiff argues that the '061 Patent does not preclude fluid also from flowing through or within the landing ring and the tool. Plaintiff, however, cites to nothing in the '061 Patent that suggests that the flow is allowed to pass inside the landing ring through the tool. The Court also has scoured the '061 Patent and finds no reference

or indication that the claimed invention would allow fluid to pass inside the landing ring through the tool. There is no persuasive evidence that a person of ordinary skill in the art would understand the '061 Patent to permit such flow. Had that been intended, the drafter of the '061 Patent should have expressed this concept clearly.

The Court's construction is strongly reinforced by the prosecution history of the '061 Patent. Prior art, specifically Carothers (U.S. Patent 2,844,205) and Milne (U.S. Patent 6,578,631), involved systems that permitted the fluid to flow through the tool. Based in part on this prior art, on May 1, 2008, the Patent Examiner initially rejected the application that resulted in the '061 Patent. Plaintiff amended the application to add that the fluid flow was diverted "via the at least one slot." *See* Defendant's Responsive Claim Construction Brief, Exhs. D-2 [Doc. # 62-3] and D-4 [Doc. # 63-3]. Fluid that is diverted via the slot would flow around the landing ring which, necessarily, is a flow path that does not pass through the tool.

Moreover, Plaintiff specifically distinguished the prior art, stating that "like Carothers, Milne also teaches allowing fluid flow through his tool and does not teach or suggest a slot in a landing assembly that diverts fluid communication around a collar and ring's engagement, as called for in claim 1." *See* Reply to Final Office Action Dated November 13, 2008, Exh. E to Plaintiff's Opening Brief [Doc. # 38-5], p. 13 of 16.

"[T]here is no principle of patent law that the scope of a surrender of subject matter during prosecution is limited to what is absolutely necessary to avoid a prior art reference that was the basis for an examiner's rejection. To the contrary, it frequently happens that patentees surrender more through amendment than may have been absolutely necessary to avoid particular prior art." *Norian Corp. v. Stryker Corp.*, 432 F.3d 1356, 1361 (Fed. Cir. 2005). In such cases, the patentee is "limited to the scope of what they ultimately claim" and is not permitted to "assert that claims should be interpreted as if they had surrendered only what they had to." *Id.* at 1362. This legal principle is necessary to foster the public notice requirement for patents. "The ability to discern both what has been disclosed and what has been claimed is the essence of public notice." *PSC Computer Prods., Inc. v. Foxconn Intern., Inc.*, 355 F.3d 1353, 1361 (Fed. Cir. 2004). "It tells the public which products or processes would infringe the patent and which would not." *Id.* The patentee is not allowed to reclaim what has been disclaimed through an amendment to avoid prior art because, otherwise, the important public notice requirement would be "eviscerated." *Id.* Plaintiff cites to nothing in the prosecution history that informed the Patent and Trademark Office that the drafter of the '061 Patent intended or anticipated that fluid would also pass within the landing ring through the tool.

Based on the foregoing, primarily the '061 Patent and the prosecution history, the Court finds that a person of ordinary skill in the art would understand the diversion terms in Claim 1, 6, 8, and 18 to mean that the fluid flow is altered via the slot to flow around the landing ring and the Patent does not describe a system for allowing fluid to flow through the tool.

### C.     35 U.S.C. § 112 ¶ 6

The '061 Patent in Claims 6, 8 and 18 describes a "slot" that diverts fluid or allows the fluid flow to be diverted. Defendant argues that the "slot" alone is an inadequate structure for diverting flow and, as a result, the term must be construed as a "means-plus-function" term pursuant to 35 U.S.C. § 112, ¶ 6. Plaintiff agrees that a slot without at least two openings would not perform the diversion function. Plaintiff argues, however, that the "open ends of the slot are part of the slot." *See* Reply Brief [Doc. # 68], p. 25.

"An applicant may express an element of a claim 'as a means or step for performing a specified function . . . and such claim shall be construed to cover the corresponding structure . . . described in the specification and equivalents thereof.'" *Ergo Licensing, LLC v. CareFusion 303, Inc.*, 673 F.3d 1361, 1363 (Fed. Cir. 2012) (quoting 35 U.S.C. § 112 ¶ 6). The applicant must, nonetheless, identify in the specification a structure that is "clearly linked or associated with the claimed

function." *Id.* (quoting *Med. Instrumentation & Diagnostics Corp. v. Elekta AB,* 344 F.3d 1205, 1219 (Fed. Cir. 2003)).

The use of the word "means" creates a rebuttable presumption that the drafter intended to invoke § 112, ¶ 6; conversely, failure to use the word "means" creates a rebuttable presumption that the drafter did *not* intend the claims to be governed by § 112, ¶ 6. *Flo Health Solutions, LLC v. Kappos*, 697 F3d 1367, 1373 (Fed. Cir. 2012). A claim limitation without the term "means" may require means-plus-function analysis if "the claim term fails to recite sufficiently definite structure or else recites function without reciting sufficient structure for performing that function." *Id.* (quoting *Mass. Inst. of Tech. v. Abacus Software,* 462 F.3d 1344, 1353 (Fed. Cir. 2006)).

The presumption from the absence of the term "means" is a strong one. *Id.* at 1374 (citing *Lighting World, Inc. v. Birchwood Lighting, Inc.*, 382 F.3d 1354, 1358 (Fed. Cir. 2004)). "When the claim drafter has not signaled his intent to invoke § 112, ¶ 6 by using the term 'means,' [the Federal Circuit is] unwilling to apply that provision without a showing that the limitation essentially is devoid of anything that can be construed as structure." *Id.* (citing *Masco Corp. v. United States*, 303 F.3d 1316, 1327 (Fed. Cir. 2002)). As a result, § 112, ¶ 6 will not apply "if the limitation

contains a term that 'is used in common parlance or by persons of skill in the pertinent art to designate structure.'" *Id.* (quoting *Lighting World,* 382 F.3d at 1359).

In this case, Plaintiff has taken the position that "the open ends of the slot are part of the slot." *See* Reply Brief, p. 25. This position is supported by the specifications; by Figures 11A and 11B of the '061 Patent; by the parties' experts' confirmation at the conclusion of the *Markman* hearing that the term "slot" in the claims and specification is meaningless unless it can divert the fluid flow; and by the parties' agreement that the slot cannot divert fluid flow unless there are openings at each end of the slot. The Court relies on Plaintiff's position, the evidence in the record, and the parties' agreement to construe the term "slot" in Claims 6, 8, and 18 of the '061 Patent to include "the openings at each end of the slot." As a result, the slot, construed to include the two "open ends," is an adequate structure for performing the diversion function. Defendant, therefore, has failed to overcome the strong presumption that claims 6, 8, and 18 of the '061 Patent are not "means-plus-function" claims to which § 112, ¶ 6 applies.

## IV.   **CONCLUSION**

The Court accepts the parties' stipulations regarding the proper construction of the agreed terms in the '061 Patent. The Court has considered the intrinsic evidence, including the prosecution history. Based on the evidence and the application of

governing claim construction principles, the Court construes the disputed terms in the claims of the '061 Patent as set forth herein.

It is **SO ORDERED**.

SIGNED at Houston, Texas, this 19th day of **March, 2013**.

_____
Nancy F. Atlas
United States District Judge